FILED

2018 APR -6 AM 11:22

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EMMETT EMERY,

    Plaintiff,

v.

WALMART INC.

    Defendant.

_____/

Case No.:

8:18 cv 822 T36 MAP

## COMPLAINT FOR DAMAGES INCLUDING DEMAND FOR INJUNTIVE RELIEF AND DEMAND FOR TRIAL BY JURY

**COMES NOW**, Plaintiff, Dr. Emmett Emery, Sr. (hereafter "Plaintiff" or "Dr. Emery"), by and through the undersigned counsel, and files this Complaint for damages against Defendant, Walmart Inc. (hereafter "Defendant" or "Walmart"), and respectfully shows this Court as follows:

### NATURE OF COMPLAINT

1. Plaintiff brings this action to obtain full and complete relief and to redress the unlawful employment practices described herein.

2. This action seeks declaratory relief, liquidated and actual damages for Defendant's unlawful employment practices on the basis of race in violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. §§ 2000e. *et seq.* (hereafter "Title VII"), as amended by the Civil Rights Act of 1991.

TPA .49847
$400

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4. Defendant is an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

5. Defendant operates a portion of their business within the Middle District of Florida. The unlawful employment practices alleged in this Complaint were committed within this District in the State of Florida.

6. Therefore, in accordance with 28 U.S.C. § 1391 and 42 U.S.C. § 2000(e) – 5(f), venue is appropriate in this Court.

## PARTIES

7. Plaintiff, Dr. Emmett Emery, Sr., is a black male residing in Hillsborough County, Florida, which is part of the Middle District of Florida.

8. Defendant, Walmart, is qualified and licensed to do business in the State of Florida, and at all times material hereto has conducted business within this District.

9. Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC).

10. The EEOC issued a "Notice of Right to Sue" on February 16, 2018, entitling an action to be commenced within ninety (90) days of receipt of that notice.

11. This action has been commenced within ninety (90) days of Plaintiff's receipt of the "Notice of Right to Sue."

## FACTUAL ALLEGATIONS

12. Plaintiff began employment at Walmart in October of 2001 and has worked at Walmart continuously since 2005.

13. In November 2011, Dr. Emery began his employment at Store #1390 in Pinellas Park, Florida, as a Co-Manager. He has remained a Co-Manager as of the filing of this Complaint.

14. At all times within this Complaint, all discriminatory actions alleged took place while Plaintiff held the position of Co-Manager.

15. Plaintiff has held various Co-Manager position while employed at store #1390, including: GM Co-Manager, Backroom Co-Manager, Food Co-Manager, Overnight Co-Manager, Total Store Co-Manager, Market Fresh Champion, and Store Inventory Champion.

16. In December of 2015, the Plaintiff obtained his Doctor Degree in Business Administration.

17. At all times within this Complaint, the Market Manager for the Plaintiff was Jeffrey Worthy (hereafter referred to as "Worthy").

18. At all times within this Complaint, the Regional Manager as the time of the conduct was Elisa Vasquez-Warner (hereafter referred to as "Elise") and the Human Resources employee was Michelle Salisbury (hereafter referred to as "Salisbury").

19. In 2012, the Store Manager at Plaintiff's store was Eric Hiron (hereafter referred to as "Hiron").

20. In 2012, the Plaintiff began reporting to the Market Manager, Worthy, that his store manager, Hiron, was displaying unethical behavior toward employees by taking credit for work he

30. The Plaintiff sent e-mails to Worthy and Salisbury every week for 12 months complaining about the conduct of Hiron, however, nothing was ever done.

31. After 12 months of constant harassment, Worthy and Salisbury held a town hall meeting in a hotel across the street from Plaintiff's store. The purpose of the town hall was to allow employees to discuss the conduct of store manager, Hiron.

32. One month after the town hall, in November of 2013, Hiron was demoted to Co-Manager, the same position held by the Plaintiff, and remained at store #1390.

33. In April of 2014, with the knowledge of Hiron's conduct, Worthy had Hiron, now a Co-Manager, provide the Plaintiff's yearly evaluation. As such, the Plaintiff received a negative evaluation.

34. In February of 2014, David Johnson (hereafter referred to as "Johnson") was hired as the Store Manager for Plaintiff's store, #1390.

35. Upon the hiring of Johnson, the Plaintiff was transitioned from the over-night shift to the Store Inventory Champion.

36. In February of 2014, store #1390 had $8.8 million dollars of inventory in the GM backroom; $2.1 million dollars of inventory in the Grocery backroom, and 38 trailers of merchandise sitting in the back of the building.

37. By mid-April of 2014, under the supervision of the Plaintiff, the GM backroom inventory was reduced to $6.1 million dollars, the Grocery backroom inventory was reduced to under $1 million dollars and the number of trailers was reduced to 18.

38. Overall, as the Store Inventory Champion, the Plaintiff oversaw an inventory reduction at store #1390 of $1.3 million dollars from $3.5 million dollars when he was transitioned into that position.

48. Plaintiff was informed once again by Worthy that he would not get an interview and that Elise would be hiring another white female from Miami for the position.

49. After withdrawing his application for store #5218, the Plaintiff then applied for the Store Manager position for store #5964 in Tampa, Florida.

50. The Tampa store is in a different market and his interview was conducted by Market Manager, Judy Hobbs. Plaintiff also presented a Business Plan to Hobbs as part of the interview.

51. Hobbs informed Plaintiff that she was submitting his name to Elise as her number one choice for the Store Manager position at store #5964.

52. Even though the Plaintiff was the number one candidate, Elise hired a white individual as Store Manager for store #5964.

53. The Store Manager for Plaintiff's current store, #1390, became available and Plaintiff approached Worthy about applying for the position.

54. Worthy informed the Plaintiff that Walmart would not hire a Co-Manager to become Store Manager in their current store and that Plaintiff should not apply for the position.

55. Plaintiff was unable to find any policy regarding the hiring of a Store Manager from a position within their current store but was told by Worthy to just "trust him."

56. A white individual was hired as Store Manager for store #1390.

57. The Plaintiff then applied for the Store Manager position at store #666 in Sebring, Florida.

58. Plaintiff was interviewed by Market Manager Ray Korsch and as he did previously, the Plaintiff presented a Business Plan as part of his interview.

59. Once again, Korsch informed the Plaintiff that he was submitting his name as his top candidate and once again Elise decided to hire a white individual instead.

72. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federal protected rights, thereby entitling him to punitive damages pursuant to 42 U.S.C. § 1981a.

73. As a consequence of Defendant's discriminatory conduct, the Plaintiff was denied career advancement and had his professional reputation and career opportunities for further advancements damaged.

## COUNT II – RETALIATION

74. Plaintiff hereby incorporates and re-alleges paragraphs 1 through 65 of the Complaint as if fully alleged herein.

75. Defendant has engaged in unlawful retaliatory practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by refusing to hire him as a Store Manager in any store overseen by Elise as retaliation for writing a letter to the CEO and President.

76. The unlawful employment practices described above were intentional.

77. The unlawful employment practices described above were done with malice or reckless indifference to the federally protected rights of the Plaintiff.

78. As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination and retaliation against Plaintiff, Plaintiff has suffered and will continue to suffer pain, humiliation and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is hereby entitled to general and compensatory damages in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment as follows:

1. That the Court grant full front pay to the Plaintiff.

2. That the Court grant full back pay to the Plaintiff.

3. That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendant's conduct;

4. That the Court grant Plaintiff punitive damages for Defendant's malicious and reckless indifference conduct;

5. That the Court grant Plaintiff all employment benefits he would have enjoyed had he not been discriminated against;

6. That the Court grant Plaintiff expenses of Litigation, including reasonable attorneys' fees, pursuant to Title VII, and/or 42 U.S.C. § 1988;

7. That the Court grant Plaintiff a jury trial;

8. That the Court grant Plaintiff all other relief the Court deems just and proper; and,

9. That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting Defendant from engaging in further discriminatory conduct.

Respectfully submitted this 6th day of April, 2018.

_____
Erik De L'Etoile, Esq.
Attorney for Plaintiff
Florida Bar No. 71675
De L'Etoile Law Firm, P.A.
10150 Highland Manor Dr. Ste. 200
Tampa, FL. 33610
(813) 563-5025
Erik@deletoilelaw.com
www.deletoilelaw.com